OPINION
On October 20, 1999, appellee, Patricia A. Tompkins of Senior Rights and Advocacy ("Senior Rights"), filed an application for appointment of a guardian for Annie Little Thomas, who was allegedly incompetent due to Alzheimer's disease. Mrs. Thomas' daughter, Dr. Georgia Parks, who also filed an application to be appointed guardian, opposed this application. On December 3, 1999, a hearing was held before a magistrate to determine the matter.
At the hearing, neither party contested whether Mrs. Thomas was incompetent, but only disputed who should be appointed guardian. Patricia Tompkins testified that she was the director of Senior Rights and Advocacy, a guardianship agency for people over sixty years of age who are possibly being exploited. The agency acted as guardians for more than one hundred people over sixty. She became aware of Mrs. Thomas through the department of human services, who had been informed that somebody had attempted to withdraw a large amount of money from Mrs. Thomas' bank account.
Douglas J. Neuman, the attorney for Security Dollar Bank in Niles, Ohio, testified that Mrs. Thomas was a customer of the bank and had talked with him on several occasions. He testified that Dr. Parks attempted to withdraw $117,000 from Mrs. Thomas' account. He did not allow Dr. Parks to withdraw the money at the time because he was worried about her security with such a large sum of money. The money was never withdrawn. Mr. Neuman said he became worried about Mrs. Thomas because she expressed concerns about the group home where she was living and wanted to go back to her own house.
Appellant is Mrs. Thomas' daughter and has two siblings. Appellant testified that when they realized, in early 1998, that their mother's mental condition had deteriorated, they made many efforts to find suitable care for her. They attempted to hire live-in caregivers and to place her in the group home, to which she objected. Because of her mental condition, Mrs. Thomas became paranoid and believed that her children were stealing her money and trying to get rid of her. Appellant testified that the house where her mother lived had been put in the name of the three children by a survivorship deed in the early 1990's, while her mother's mental condition was still sound. She further testified that she attempted to withdraw money from her mother's account to pay for her care. The family also became concerned about the motives of her longtime companion, Tom Washington, and believed that he may be trying to take advantage of their mother's condition.
At the conclusion of the hearing, the magistrate voiced her concerns about the handling of Mrs. Thomas' finances and the attempts to disrupt the relationship between her and Mr. Washington. She indicated that she would recommend that the trial court appoint Senior Rights as guardian for a six-month period and instructed the parties to work for an acceptable permanent solution during that time period. At the end of those six months, the trial court would re-evaluate the situation. At that time, appellant's attorney expressed his exceptions to the magistrate's pronouncement and his intention to dispute the decision.
On December 13, 1999, the magistrate issued her decision recommending that Patricia Tompkins be appointed guardian for a six-month period. On that same day, the trial court issued a judgment entry stating:
 "The court accepts and adopts the magistrate's report and decision of December 7, 1999 and finds that several concerns question the suitability of Georgia Parks as guardian at this time, including the attempts by [Dr.] Parks to withdraw large sums of money from Annie Thomas's Security Bank Account, the transfer of the family home to the three children, the suitability of the [Penny] Feathers' group home as Mrs. Thomas' residence and the barring of Mrs. Thomas' contact with Thomas Washington, her companion of over twenty years."
 It appointed Patricia Tompkins the guardian, ordered the guardian and guardian ad litem to investigate the concerns addressed by the court, and determined that Dr. Parks' suitability as a guardian would be re-evaluated at the end of the six-month period. On December 21, 1999, appellant filed a motion to vacate the appointment of the guardian and for leave to file objections to the magistrate's decision. In her motion, appellant disputed the trial court's adopting the magistrate's decision without giving her an opportunity to file objections. On December 22, 1999, the trial court overruled appellant's motion to vacate and converted her motion for leave to file objections to the magistrate's report, which it overruled.
Appellant raises the following assignment of error:
 "The trial court abused it's [sic] discretion and erred when it denied appellant's motion to vacate appointment of guardianship."
 This court chooses not to address appellant's sole assignment of error. Since the appointed guardian's six-month term has expired, we remand for the trial court to conduct a hearing to re-evaluate the suitability of appointing Dr. Georgia Parks as guardian, as set forth in its December 13, 1999 order.
We request that the trial court advance this matter on its docket so that the review of the guardianship status may be redetermined at the trial level as expeditiously as possible.
______________________________________ JUDGE ROBERT A. NADER
FORD, P.J., CHRISTLEY, J., concur.